UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY ALAN RISCHE,

                Plaintiff,

   v.

UNITED STATES OF AMERICA,

                Defendant.

CASE NO. 2:20-cv-00033-BAT

**ORDER GRANTING UNITED STATES OF AMERICA'S CROSS MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross motions for summary judgment on Plaintiff's remaining claims regarding § 6702 penalties assessed by the IRS on Plaintiff's 2009, 2010, and 2011 tax returns, and Plaintiff's demand for a refund of his 2017 federal income tax. Dkt. 27 and Dkt. 30. Plaintiff's claims regarding other tax years were previously dismissed for lack of jurisdiction. Dkt. 20. Based on the parties' briefs and summary judgment evidence, the Court denies Plaintiff's motion (Dkt. 27); grants the Government's motion (Dkt. 30) and dismisses Plaintiff's claims with prejudice.

<u>UNDISPUTED FACTS</u>

During the tax years at issue, Plaintiff worked for Lightspeed Design, Inc., a technology company in Bellevue, Washington. Dkt. 30-1, Declaration of Matthew Uhalde, Exhibit 1, Plaintiff's Response to Defendant's First Set of Interrogatories, at ¶ 3; Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 7. For each tax year, Lightspeed issued a Form W-2 reporting (1) Plaintiff's total wages, tips, and other compensation;

and (2) the amount of federal taxes withheld from his paychecks. *Id.*, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 9. The following table summarizes the information on Plaintiff's Forms W-2:

| Tax Year | Wages, Tips, and other Compensation | Federal Income Tax Withheld | Social Security Tax Withheld | Medicare Tax Withheld | Total Federal Taxes Withheld |
|----------|-------------------------------------|-----------------------------|------------------------------|-----------------------|------------------------------|
| 2009[1]  | $62,770.99                          | $8,420.00                   | $3,891.80                    | $910.18               | $13,221.98                   |
| 2010[2]  | $62,346.50                          | $8,615.00                   | $3,865.48                    | $904.02               | $13,384.50                   |
| 2011[3]  | $65,000.00                          | $9,477.00                   | $2,780.00                    | $942.50               | $13,199.50                   |
| 2017[4]  | $111,019.00                         | $22,855.00                  | $6,883.00                    | $1,609.00             | $31,347.00                   |

On January 10, 2013, Plaintiff mailed the IRS amended income tax returns (Forms 1040X) and substitute W-2s (Forms 4852) for tax years 2009–2011. Dkt. 30-1, Uhalde Decl. Ex. 3–5. Plaintiff admits that these exhibits are authentic copies of his W-2s. *Id.*, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶¶ 1–4.

The Forms 1040X reported $0 in taxable income for all three tax years. The Forms 4852 reported $0 in wages for all three years while also reporting federal tax withholding as shown in

---

[1] Dkt. 30-1, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 10; Exhibit 3.

[2] Dkt. 30-1, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 12; Exhibit 4.

[3] Dkt. 30-1, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 14; Exhibit 5.

[4] A copy of Plaintiff's 2017 Form W-2 is not available, but the information taken from the W-2 is available on the IRS Wage and Income Transcript for 2017. Dkt. 30-2, Declaration of Rosary Tanner, IRS Acting Advisory Group Manager, Ex. 5. Plaintiff admits that the W-2 reported $111,019 in box 1, "wages, tips, other compensation." Dkt. 30-1, Uhalde Decl. Exhibit 2, Plaintiff's Response to Defendant's First Set of Requests for Admission, at ¶ 16.

the table above. By reporting tax paid through withholding while allegedly earning $0, Plaintiff sought a full refund of his withheld federal taxes for those years.

Plaintiff mailed the IRS a second set of documents two months later. Dkt. 30-1, Uhalde Decl. Ex. 6. This was apparently in response to an IRS Letter 3176 warning Plaintiff that his 2011 Form 1040X asserted a frivolous tax position. Included with Plaintiff's second mailing was a letter opposing the IRS notice, along with a new Form 1040X for 2011, signed and dated March 25, 2013. This new Form 1040X again reported $0 in taxable income in 2011. The IRS processed it as purporting to be a second tax return for 2011.

On all four Forms 1040X, Plaintiff explained that the reason he had no taxable income those years was because he worked in the private sector, and he cited to the definition of "wages" in 26 U.S.C. §§ 3401(a) and 3121(a). On August 12, 2013, the IRS charged Plaintiff four $5,000 penalties under 28 U.S.C. § 6702—one for each of his 2009–2011 tax returns, including the second return for 2011. Dkt. 30-2, Tanner Decl., Ex. 1–3 (IRS Account Transcripts for 2009–2011). These $20,000 in penalties are the first of two taxes that Plaintiff wants refunded in this suit.

On April 15, 2018, Plaintiff mailed the IRS a letter with the subject "Administrative Claim for Refund." (Dkt. 15-1; Ex. 3 to Rische Declaration; Dkt. 15-1 pp. 22-30; Rische Decl. ¶ 11). The IRS has not independently located copies of Plaintiff's letters from its records. However, the Government does not dispute the authenticity of the copies that Plaintiff produced in this case. The Government also does not contest that Plaintiff mailed the letters on the dates he claims. Dkt. 30, p. 4 n.11. The purported refund claim listed the § 6702 penalties for 2009-2011. Plaintiff stated he was entitled to the refund because "The NFTL was filed prematurely or wrongfully because I am not liable for civil penalties because nothing that I submitted to the IRS

is frivolous" and "the filing and recording of the documents listed above [liens and levy notices] was premature and otherwise not in accordance with administrative procedures of the Secretary or of the law." Plaintiff also alleged that the IRS double collected and denied him his collection due process ("CDP") hearing requests.

On May 1, 2018, Plaintiff sent another letter to the IRS requesting expedited service for his April 5, 2018 "Administrative Claim for Refund." Dkt. 15-1; Ex. 4 to Rische Declaration, Dkt. 15-1 pp. 32-34. This letter discussed economic hardship caused by IRS levies but added no new claims. On August 26, 2019, Plaintiff sent a letter to the IRS with the subject "Administrative Claim for Refund." Dkt. 15-1; Ex. 12 to Rische Declaration, Dkt. 15-1, pp. 53-57. In this letter, Plaintiff challenged the § 6702 penalties for 2009-2011, stating: "[t]he law does not allow for double penalties," and the "law does not allow continued collection after full satisfaction of a liability, or collection after the request for a Collection Due Process ["CDP"] hearing." *Id*. at 53. Plaintiff also stated, "I deny liability for each and every asserted civil penalty." The IRS has not issued refunds to Plaintiff for the $20,000 in § 6702 penalties for 2009-2011. Dkt. 30-2, Tanner Decl., Ex. 1–3.

The second sum Plaintiff wants refunded is the $22,855 in federal income taxes withheld from his paychecks in 2017.[5] As reflected in the table above, Plaintiff admits to receiving $111,019 as compensation from Lightspeed Design for this year. However, Plaintiff filed a 2017 federal income tax return (Form 1040EZ) reporting $0 in wages, salaries, and tips and $0 in taxable income. Dkt. 30-1, Uhalde Decl., Ex. 9. He also listed his occupation as "Private sector

---

[5] Plaintiff requested a refund of *all* federal tax, including social security and Medicare, but as is later discussed, a Form 1040 is not the method to file a refund claim for these non-income taxes. Thus, Plaintiff has not filed an administrative claim for these non-income taxes, and they are not at issue here.

worker," and attached a Form 4852 to "correct" his W-2, citing the definitions from §§ 3121 and 3401. *Id.* The IRS did not refund Plaintiff's income tax withholdings. *Id.*, Tanner Decl. Ex. 4.

<u>SUMMARY JUDGMENT STANDARD</u>

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a moving party, the Government bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence that demonstrates the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this initial responsibility, the burden shifts to the party opposing summary judgment to establish that there is a genuine dispute over a material fact. *See*, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *US Local 343 United Ass'n of Journeyman Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994).

The opposing party cannot meet its burden simply by offering conclusory statements unsupported by factual data or by showing that there is some metaphysical doubt as to the material facts. *See*, *Matsushita*, 475 U.S. at 586-87. The opposing party also may not rely on the allegations or denials in pleadings to establish a genuine issue of fact but must come forward with an affirmative showing of evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

If the opposing party cannot produce sufficient evidence to demonstrate that a triable issue of fact exists, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Id*.

Plaintiff does not deny that he worked at Lightspeed during 2009, 2010, 2011, and 2017, and that Lightspeed paid him the amount of money reported on his Forms W-2 for those years "for his work that he did for the company." Plaintiff also does not deny that he submitted the returns to the IRS that reported $0 in taxable income while showing federal income tax withholding based on his contention that he did not earn taxable income because he is a private-sector worker. Plaintiff contends however, that the IRS wrongfully assessed the § 6702 penalties because it did not satisfy the statutory elements; the second document he submitted for the 2011 tax year was a duplicate and not subject to penalty; he is not a "person" subject to taxation; the IRS garnished his wages without providing a CDP hearing; and the IRS failed to comply with 26 U.S.C. § 6751(b)(1) by making assessments without proof of approval. As to his demand for a refund of his 2017 federal income tax, Plaintiff contends the Government has the burden of proof and the IRS was required to have previously challenged his tax returns before collecting tax.

A.      Demand for Refund of § 6702 Penalties

      1.      Legal Standard

"A person shall pay a penalty of $5,000" if three elements are satisfied: (1) the person filed a document that purports to be a tax return, (2) the document either contains information that on its face indicates the self-assessment is substantially incorrect or omits information on which the substantial correctness of the self-assessment may be judged, and (3) the document takes a position that the IRS has identified as frivolous or reflects a desire to delay or impede tax administration. 26 U.S.C. § 6702(a).

In a tax refund suit, the burden is generally on the taxpayer to show entitlement to a refund. *Washington Mut., Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017). Section

6703(a) narrowly shifts this burden with regard to § 6702 penalties, and it places the burden on the government only to establish "that the plaintiff's conduct renders them liable for a civil penalty," which here would mean the burden to show Plaintiff submitted a return that meets the three elements above. *See In re Tax Refund Litig*., 766 F. Supp. 1248, 1254 (E.D.N.Y. 1991*), aff'd in part, rev'd in part sub nom. on other grounds, In re MDL-731 Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Properties Leasing*, 989 F.2d 1290 (2d Cir. 1993); *see also Schlabach v. United States*, No. 2:18-CV-00053-SMJ, 2019 WL 1338402, at *3 (E.D. Wash. Mar. 25, 2019) ("The United States bears the burden of proving all three elements").

     2.   <u>Three Elements of § 6702</u>

         a.   <u>Plaintiff Filed Documents That Purported to Be Tax Returns</u>

Three of the documents subject to penalty were the 2009–2011 tax returns, each consisting of a Form 1040X and attachments, that Plaintiff mailed to the IRS on January 10, 2013. Dkt. 30-1, Uhalde Decl., Ex. 3—5. Plaintiff does not dispute that these were tax returns that he filed with the IRS. Moreover, "[s]ection 6702 requires only that the document filed *purport* to be a tax return, not that it actually be a tax return." *Bradley v. United States*, 817 F.2d 1400, 1403 (9th Cir. 1987). Thus, all three documents satisfy the first element of § 6702(a).

As to the second Form 1040X for tax year 2011, Plaintiff included this document with a letter that he mailed to the IRS on March 25, 2013. Dkt. 30-1, Uhalde Decl., Ex. 6. The two-page, single-spaced letter made no mention of the Form 1040X, except to list it as one of several attachments, with the descriptor "Reference copy of a previously-submitted tax return concerning the period 2011." Plaintiff contends that the Form 1040X was merely a copy of a previous tax return and thus did not purport to be a tax return.

Under Ninth Circuit precedent however, virtually any Form 1040 mailed to the IRS satisfies the standard of purporting to be a tax return. *See*, *e.g.*, *Olson v. United States*, 760 F.2d 1003, 1004-05, (9th Cir. 1985) (unsigned Form 1040 with the words "not a return" written on it along with a cover letter held to be a purported tax return under § 6702(a)); *see also*, *Bradley*, 817 F.2d at 1403 (anti-war message scribbled on almost entirely blank Form 1040 with letter cautioning the IRS that the form was not to be treated as a tax return held to be a purported tax return under § 6702(a)).

Additionally, the second Form 1040X for the tax year 2011 that Plaintiff sent to the IRS in March 2013, was filled out completely, signed, and dated. In the attached affidavit, Plaintiff stated "the tax return I completed and submitted concerning the year 2011 ("newly signed copy attached)…." By this statement, Plaintiff has indicated that the return is not a mere photocopy or identical submission of Plaintiff's 2011 tax return. Plaintiff's reference to the Form 1040 as a "reference copy at the end of his accompanying letter" does not change this analysis as the second Form 1040 bears a new signature date. Plaintiff's letter also makes clear that he mailed the second Form 1040 to the IRS to obtain a refund for 2011.

Plaintiff's reliance on *Kestin v. Comm'r of Internal Revenue*, 153 T.C. 14 (2019) is inapposite as the taxpayer in that case submitted a photocopy of an earlier Form 1040 with a large stamp reading "photocopy – do not process." Here, Plaintiff's "reference copy" was not a copy but a new Form 1040 signed and dated March 25, 2013. Plaintiff's second submission is not labeled a photocopy and it is only substantially identical to his first submission. *See Grunsted v. Comm'r*, 136 T.C. 455, 456 (2011) (Tax Court upheld separate penalties for each return for the same year where the taxpayer submitted what purported to be a return, received a letter from the IRS saying the first return contained frivolous positions, and the taxpayer then submitted a new

version of the return and letter). Similarly, separate § 6702 penalties for each return for the same year are appropriate here.

Plaintiff also contends that the new Form 1040 did not purport to be a tax return because he did not attach a copy of his W-2. However, the newly signed Form 1040, which reported $0 in taxable income with Plaintiff's explanation that private-sector income is not taxable, contained sufficient misinformation to trigger a penalty. Moreover, the fact that Plaintiff mailed the form to the IRS and not to the "IRS Processing Center" does not change the conclusion that the new Form 1040 purported to be a tax return. As the Government correctly notes, if there were no penalty because two returns were sent to two different locations, tax defiers could send frivolous returns all over the country and the IRS would have no recourse to penalize such abusive conduct. Such a result would be absurd.

Based on the foregoing, the Court concludes that the first element of § 6702(a) is satisfied.

> ### b. Self-Assessment is Substantially Incorrect

On Line 1 of each Form 1040X, Plaintiff sought to amend his adjusted gross income from the amounts reported on his W-2s to a "correct amount" of $0. In Part III, Plaintiff provided the following explanation for this change:

> In [2009–2011] I worked in the private-sector and had no "income, profit, or wages" as defined in the IRC and sections 3401(a) and 3121(a). The private sector company for whom I worked filed an erroneous W-2 information return. This private sector company characterized payments as "income, profits, or wages." I am rebutting their claim, stating that I was a private-sector worker [non-federal worker] working for a private-sector company (non-federal entity) as defined in 3401(c)(d). I did not then, nor do I now, hold any federally-privileged position.

Plaintiff also attached to each 1040X an IRS Form 4852 Substitute for Form W-2 on which he listed Lightspeed Design, Inc. as his "employer" or "payer" and reported $0 in wages, tips or

other compensation. In Box 10 of the Forms 4852, Plaintiff explained that Lightspeed Design's W-2s were incorrect because they allegedly did not follow the definition of "wages" from IRC §§ 3401(a) and 3121(a).

In other words, Plaintiff self-assessed having a gross income of $0 based on the theory that money earned from a private-sector company does not contribute to a person's gross income. Because that argument is frivolous, the self-assessment was incorrect on its face. *See*, *e.g.*, *O'Brien v. Comm'r*, 104 T.C.M. 620 (holding that a return reporting $0 in income when a W-2 showed compensation "was substantially incorrect on its face" and "a return that reports taxable income and tax of zero is frivolous in circumstances where a third-party payor has reported on an information return that the taxpayer had income and that income tax was withheld on that income").

The Court need not waste much time with Plaintiff's "theory" that only federal workers are required to pay federal taxes. The Tax Code defines taxable income as "all income from whatever source derived," 26 U.S.C. § 61(a), and the Supreme Court defines taxable income as "all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *C.I.R. v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955); *Westpac Pac. Food v. C.I.R.*, 451 F.3d 970, 975 (9th Cir. 2006) (citing *Glenshaw Glass* and stating that the definition of "income" is "expansive"). Moreover, this Court and the Ninth Circuit previously rejected Plaintiff's claim that his income from a private company is exempt from federal taxation. *See Rische v. United States*, 2017 WL 2215808 *3, No. C16-339RSL, (W.D. Wash. May 19, 2017), *affirmed by Rische v. United States*, 723 F. App'x 561 (9th Cir. 2018); *see also* Plaintiff's Opening Brief filed in 2017 WL 5757683 at *53–55 (arguing that the District Court erred in discrediting his tax theory).

Plaintiff's self-assessments – that income from a private company is not taxable – were incorrect on their face. Accordingly, the second element of § 6702(a) is satisfied.

### c.   The IRS Gave Notice of Frivolousness

At the time Plaintiff filed his Forms 1040X, IRS Notice 2010-3324[6] listed several positions that the IRS has identified as frivolous for purposes of § 6703, including the positions taken by Plaintiff here:

> Section III(1)(e):  A taxpayer has the option under the law . . . to file a tax return reporting zero taxable income and zero tax liability even if the taxpayer received taxable income during the taxable period for which the return is filed, or similar arguments described as frivolous in Rev. Rul. 2004-34, 2004-1, C.B. 619.

> Section III(7): "Only certain types of taxpayers are subject to income and employment taxes, such as employees of the Federal government, corporations, nonresident aliens, or residents of the District of Columbia or the Federal territories, or similar arguments."

Courts have uniformly held that the language in Section III(7) covers the argument that employees of private businesses are not subject to federal taxation and have consistently held that returns making the argument satisfy the third element of § 6702. *See*, *e.g.*, *Smith v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2021-029 (T.C. 2021); *United States v. Lovely*, 420 F. Supp. 3d 398, 407 (M.D.N.C. 2019); *Grunsted* 136 T.C. at 460; *O'Brien*, 104 T.C.M. 620.

Plaintiff argues that his Forms 1040X "contain no argument whatsoever." However, the explanation Plaintiff provided in Part III is clearly an argument or "position" and it is clearly frivolous. Accordingly, the third element of § 6702(a) is satisfied.

Plaintiff makes additional meritless arguments against the frivolous return penalties. Plaintiff contends that the notice entitling him to a CDP hearing was not sent to him by the

---

[6] https://www.irs.gov/pub/irs-drop/n-10-33.pdf [https://perma.cc/ZCY9-7LMG]; accessed 6 Jul. 2021.

Secretary of the Treasury and there was no proof that the person who sent the notice had been properly delegated to do so. Plaintiff received the notice, signed by a representative of the IRS. The Secretary of the Treasury properly delegated his authority pursuant to statute and regulation to IRS employees. See 26 U.S.C. § 7701(a)(11)(A); 26 U.S.C. § 7701(a)(12)(A)(i); Treas. Reg. § 301.7701–9 (26 C.F.R.); Delegation Order 193 (Rev.6). Plaintiff's argument is frivolous and without merit. *See Hughes v. United States*, 953 F.2d 531, 536-539 (9th Cir. 1992); *Hoffman v. United States*, 209 F. Supp. 2d 1089, 1094 (W.D. Wash. 2002).

Plaintiff also argues that the IRS is circumventing the frivolous penalty statute because the IRS' penalty notice (CP 15) "misquotes" § 6702(a)(1)(A). Whereas the statute contains the words "does not contain", Form CP15 contains the words "fails to include." This argument is nonsensical as the terms "does not contain" and "fails to include" are essentially synonymous. Moreover, the penalties against Plaintiff were based under subsection B (for presenting self-assessments substantially incorrect on their face) and not subsection A.

3.    Definition of "Person"

Plaintiff also argues that the IRS cannot charge him penalties under § 6702(a) because he is a "human" and not a "person". This is a ridiculous argument. A "person" is defined as a "human, individual"… "one (such as a human being…) that is recognized by law as the subject of rights and duties." *See* "Person." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/person. Accessed 6 Jul. 2021. Nothing in Section 6671(b) states otherwise.

Section 6671(b) clarifies that "[t]he term 'person', as used in this subchapter, *includes* an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation

occurs." *Id.* (emphasis added). Plaintiff also argues that this is an exclusive list and that he therefore is not a person for purposes of § 6702(a). Plaintiff's proposed reading is "too narrow a reading of the section. While the term 'person' does include officer and employee, it certainly does not exclude all others. Its scope is illustrated rather than qualified by the specified examples." *United States v. Graham*, 309 F.2d 210, 212 (9th Cir. 1962).

### 4. Garnishment

In his motion for summary judgment, Plaintiff argues that the IRS could not garnish his wages to pay the § 6702 penalties without first granting his request for a CDP hearing and the IRS's failure to do so entitles him to a full refund of the garnished amounts. The Court has already held that it lacks jurisdiction to consider this argument. *See* Dkt. 20, (Order, p. 11) ("The Court cannot examine whether that denial complied with § 6330, because the Tax Court has exclusive jurisdiction to review such a claim."). Plaintiff cannot again raise this issue at the summary judgment stage.

### 5. Jurisdiction – Refund Claim Based on 26 U.S.C. § 6751

For the first time, Plaintiff argues that the § 6702 penalty assessments against him are invalid because the Government has not produced documents showing compliance with 26 U.S.C. § 6751(b)(1). That code section states, "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Plaintiff now claims that because the Government has not produced documents showing supervisor approval for the penalties against him, the Court must grant him summary judgment and rule that the IRS assessments are improper. The Court disagrees as this argument improperly varies from Plaintiff's purported refund claims and he cannot raise it now.

Under the variance doctrine, "a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund." *Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016). "The IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention… If the claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Boyd v. United States*, 762 F.2d 1369, 1372 (9th Cir. 1985); *see also Lockheed Martin Corp. v. US*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (prohibiting a taxpayer from changing its claim after it filed refund suit because taxpayers "may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS"). The purpose of the variance requirement is "to prevent surprise and to give the IRS adequate notice of the claim and its underlying facts so that it can make an administrative investigation and determination regarding the claim." *Boyd*, 762 F.2d at 1371. The variance doctrine derives from the regulation for refund claims, 26 C.F.R. § 301.6402-2(b)(1), requiring a taxpayer to "set forth in detail each ground upon which a credit or refund is claimed." Although "crystal clarity and exact precision are not demanded, at a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Charter Co. v. United States*, 971 F.2d 1576, 1580 (11th Cir. 1992).

Because a valid administrative claim for a refund is a jurisdictional requirement, "[f]ederal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Charter Co.*, 971 F.2d at 1579. Courts applying the variance doctrine to refund claims based on § 6751(b) have held that taxpayers must raise that argument for a refund at the administrative stage, and failure to do so means the court cannot hear the argument. 14A Mertens Law of Fed. Income Tax'n, § 55:4 "Procedure for penalty assessments" (2021). *See also Ginsburg v. United*

*States*, No. 617CV1666ORL41DCI, 2019 WL 1576017, at *4 (M.D. Fla. Mar. 11, 2019)

(taxpayer's motion denied and Government's motion for summary judgment granted in part

because the taxpayer failed to raise § 6751 approval in his administrative refund claim).

Plaintiff's reliance on *Chai v. Comm'r*, 851 F.3d 190 (2d Cir. 2017) does him no good

because *Chai* was a Tax Court case in which the taxpayer could raise the § 6751 issue, which

differs from a tax refund litigation in district courts. See Ginsburg, 2019 WL 1576017, at *3 n.11

and *Yates v. United States*, No. 19-CV-06384-VKD, 2020 WL 2615011, at *6 (N.D. Cal. May

22, 2020) – in both cases, the district court lacked jurisdiction. Here, it is undisputed that

Plaintiff did not raise compliance with § 6751(b) as a basis for refund of the § 6702 penalties in

any of his purported refund claims. In fact, it is not entirely clear that Plaintiff ever filed valid

administrative refund claims as his refund claims were set forth in a series of letters sent to the

IRS and not in IRS Forms 843. *See* 26 C.F.R. § 301.6402-2(c). Failure to file a proper

administrative claim for a § 6702 penalty deprives a court of jurisdiction over the claim. *Brown

v. United States*, 35 Fed. Cl. 258, 266 (1996), *aff'd*, 105 F.3d 621 (Fed. Cir. 1997). And, while it

is possible for taxpayers to submit what courts consider an "informal refund claim" if it contains

sufficient information, it must then later be perfected. *Hollie v. Comm'r*, 73 T.C. 1198, 1212

(1980). Because Plaintiff never filed Forms 843 to perfect his potential informal claims, it is

unclear if he has filed sufficient administrative refund claims to grant the Court jurisdiction over

even those arguments that were clearly articulated in Plaintiff's letters.

Regardless, in the three letters that Plaintiff claims are his refund claims for 2009-2011,

there is no mention of § 6751(b) or *Chai* as a reason why he is not liable for the § 6702 penalties.

In his "refund claims," Plaintiff asserts issues with his CDP hearing requests, alleged double

collection, the filing of liens "not in accordance with the administrative procedures of the

Secretary or of the law," and that he disputed liability for the penalties. Plaintiff never raised supervisor approval as a reason why he did not owe the penalties although there was nothing preventing Plaintiff from raising such an argument in his purported administrative claims because Section 6751 has been around since 1998, and the *Chai* opinion since 2017. *See Mellow Partners v. Comm'r*, 890 F.3d 1070, 1080–81 (D.C. Cir. 2018) (refusing to hear a § 6751 argument on appeal because it was not raised earlier, and the taxpayer could easily have done so in 2018).

Accordingly, Plaintiff's attempt to raise the failure to comply with § 6751(b) claim in this lawsuit is an improper variance and the Court lacks jurisdiction over any claim based on this argument. *See Ginsburg*, 2019 WL 1576017, at *4; Yates, 2020 WL 2615011, at *6.

In sum, the Government need not show compliance with § 6751(b) under the variance doctrine, and the Government has met its burden under § 6703 of showing the three factual elements for the frivolous return penalties.

B.     Demand for Refund of 2017 Tax

1.     *Lewis v. Reynolds*

In a tax refund suit, the question presented is whether a taxpayer has overpaid his tax. *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932); *Sokolow v. United States*, 169 F.3d 663, 665 (9th Cir. 1999). "[T]he taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis*, 428 U.S. 433, 440 (1976) (citing *Lewis*, 284 U.S. at 283). The Supreme Court defines "overpayment" as "any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947). The Government may "retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." *See Lewis*, 284 U.S. at 283; *Rische v. United States*, 2017 WL 2215808, *2.

Determining if a taxpayer overpaid his tax "involves a redetermination of the entire tax liability" and "it is incumbent upon the claimant to show that the United States has money which belongs to him." *Lewis*, 284 U.S. at 283.

For the second time, Plaintiff argues that *Lewis* "has long ago been superseded by statute." *See* Dkt. 18, at 17-20 and Dkt. 28, p. 2 in Case No. 16-339. His reasoning is the same, *i.e.*, that in 1999, the Ninth Circuit wrote, "Congress superseded *Lewis*, by statute." *Sokolow*, 169 F.3d at 664. In *Sokolow*, however, the Ninth Circuit was simply acknowledging that Congress partially superseded *Lewis* by statute on an issue that is not relevant to this case (*i.e.*, whether the Government could keep a tax payment made after the statute of limitations for collecting the tax had expired). *Sokolow*, 169 F.3d at 665 ("[u]nlike the previous law, which the Court had construed in *Lewis*, the Revenue Act of 1928 declare[d] that any payment of a tax after expiration of the period of limitations shall be considered an overpayment.") But as this Court already recognized, *Lewis* was not superseded where, as here, the Government received a tax payment before the collection statute expired. *See Rische*, 2017 WL 2215808, at *2.

Taxpayers have the burden of showing that they overpaid their taxes in a refund suit. *Stead v. United States*, 419 F.3d 944, 947 (9th Cir. 2005). The Supreme Court has defined "overpayment" as "any payment in excess of that which is properly due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).[7] To determine the tax liability to see if there was an overpayment, the Supreme Court looked to amounts that had not been assessed by the IRS, and that could not be assessed because of the statute of limitations. *Lewis*, 284 U.S. at 283 ("Although the statute of limitations may have barred the assessment and collection of any

---

[7] 26 U.S.C. § 6401 includes some items that are treated as overpayments, but it does not provide a comprehensive list.

additional sum, it does not obliterate the right of the Government to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded").

Accordingly, in this refund suit, the issue is whether Plaintiff made an overpayment of tax, which requires determining what his correct tax liability should be. Critically, this does not require that the IRS already have disputed previously filed returns or assessed additional amounts.

### 2. Previous Challenge

Plaintiff contends that because the IRS failed to assess a different tax liability, the IRS is bound to honor the $0 tax liability, which was reported by Plaintiff and recorded on his 2017 account transcript by the IRS. However, an IRS assessment is not a prerequisite for a tax liability.

IRS assessments are bookkeeping procedures that allow the government to administratively collect tax. *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976); *see also* 26 U.S.C. §§ 6303 (requiring a notice and demand for tax after assessment), 6321 (a lien arises after such notice and demand), and 6331 (allowing the IRS to levy after notice and demand following assessment); *Moran v. United States*, 63 F.3d 663, 666 (7th Cir. 1995) ("an assessment is not a prerequisite for a tax liability," and assessments are neither "the beginning nor end of tax liability") (*partly overruled on other grounds by Malachinski v. C.I.R.*, 268 F.3d 497 (7th Cir. 2001)).

Under *Lewis v. Reynolds*, the Government need not have previously assessed taxes (through a return reporting the amount, through an audit and notice of deficiency, or through a substitute for return under 26 U.S.C. § 6020) to re-determine what a taxpayer's correct tax

liability should be in a refund suit. The lack of assessment just means that the IRS cannot administratively collect the tax, but even if the statute of limitations to assess and collect a tax has expired, the Government may retain payments it already has received if they would have been due given the accurate determination of a taxpayer's liability. *Lewis*, 284 U.S. at 283. Here again, Plaintiff raised and lost this argument in his earlier lawsuit. *See Rische*, 2017 WL 2215808, at *2 (Even where the government can no longer assess an individual's income tax for the years in question due to procedural bars (such as the statute of limitations, or the government's failure to issue a notice of deficiency or a 26 U.S.C. § 6020(b) return), the individual's tax liability must nonetheless be calculated to determine whether there was, in fact, an overpayment.")

Accordingly, it is not relevant that Plaintiff falsely reported $0 in income on his returns and that the IRS transcribed that number onto his account transcript. It is also not relevant that the IRS never audited Plaintiff's 2017 tax return or prepared returns pursuant to § 6020(b)—self-reporting amounts on a return does not establish their correctness. Plaintiff has admitted to facts that establish he received taxable income in 2017, and the Government can rely on those facts to determine Plaintiff's correct tax liability in a refund suit.

3.   Admitted Facts

Plaintiff admits that in 2017 Lightspeed paid him $111,019 as compensation for his work. This income is taxable. Plaintiff further admits that he could only claim the standard deduction for these tax years. With this knowledge, it is possible to determine what Plaintiff's correct tax liability is for 2017. The precise calculations to determine Plaintiff's tax liability, based on these admitted facts, is set forth in the Declaration of tax computation specialist Santos Hernandez. Dkt. 30-4, pp. 1-3. Given a gross income of $111,019 in 2017 and allowing for the personal

exemption and standard deduction for that year, Plaintiff had taxable income of $100,619, which means he had an income tax liability of $21,155.07. *Id.* Plaintiff had $22,855.00 withheld as income tax in 2017. Consequently, an extra $1,699.93 was withheld. Thus, Plaintiff overpaid his tax for 2017 by approximately $1,699.93 and not the full $22,855.00 he claims. The Government concedes this amount and agrees that the IRS should schedule a $1,699.93 overpayment for Plaintiff's 2017 income tax, with any actual refund amount paid subject to 26 U.S.C. § 6402. Dkt. 30, pp. 32-33.

4.  Jurisdiction Over Social Security and Medicare Tax Claim

On line 7 of Plaintiff's Form 1040EZ, which says "Federal income tax withheld," Plaintiff reported the total amount of federal taxes—*i.e.*, income taxes plus Social Security and Medicare taxes—withheld in 2017. However, the face of Form 1040EZ makes clear that the form can only be used to claim an income tax refund. Refunds of Social Security and Medicare taxes must be separately claimed on a Form 843. *See* IRS Publication 505, available at https://www.irs.gov/ pub/irs-pdf/p505.pdf ("If you had only one employer and he or she withheld too much social security, Medicare, or tier 1 RRTA tax, ask the employer to refund the excess amount to you. If the employer refuses to refund the overcollection, ask for a statement indicating the amount of the overcollection to support your claim. File a claim for refund using Form 843, Claim for Refund and Request for Abatement.").

It is undisputed that Plaintiff did not submit a Form 843 for tax year 2017 and consequently, he did not make an administrative refund claim for those taxes, which is a jurisdictional requirement for suits in federal district court. *See* 26 U.S.C. § 7422(a). Thus, Plaintiff's refund claim for his 2017 taxes must be limited to income taxes. *See Klein v. United States*, No. CV0902773MMMAJWX, 2010 WL 11508792, at *13 (C.D. Cal. June 29, 2010)

(dismissing a refund suit because the taxpayer failed to file a Form 843 with the IRS).

<u>CONCLUSION</u>

Plaintiff raises many frivolous legal arguments but does not deny the material facts – *i.e.*, he worked at Lightspeed during 2009, 2010, 2011, and 2017; Lightspeed paid him the amount of money reported on his Forms W-2 for those years; these payments were "for his work that he did for the company;" Plaintiff submitted the returns to the IRS that reported $0 in taxable income while showing federal income tax withholding; and, Plaintiff claimed that he did not earn taxable income because he is a private-sector worker. Based on these admitted facts, there can be no dispute that the IRS properly assessed $20,000 in § 6702 penalties for Plaintiff's 2009–2011 tax filings. Nor can there be any dispute that Plaintiff is not entitled to his claimed income tax refund for 2017.

Therefore, the Court **grants** the Government's cross motion for summary judgment (Dkt. 30) and **denies** Plaintiff's motion for summary judgment (Dkt. 27). The Court determines that (1) the 26 U.S.C. § 6702 penalties for frivolous returns for 2009, 2010, and two for 2011, are proper and Plaintiff's claim for a refund of these penalties is **denied**; (2) Plaintiff's claim for a refund of all of his 2017 withholdings is **denied** as his taxable income for 2017 was $100,619.00 and his federal income tax liability was $21,155.07. Therefore, Plaintiff overpaid his 2017 income tax by only $1,699.93, with any potential payment of the refund for this overpayment subject to 26 U.S.C. § 6402.

Dated this 8th day of July, 2021.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge